Curia, per

Dunkin, Ch.
This Court concur with the Chancellor, that the instruments bearing date 12th April, 1834, are valid as a marriage settlement, and that the com *207 plainant is entitled to subject the property specifically described in the mortgage to the payment of the ante-nuptial bond, executed by the defendant, L. L. Levy. It is insisted, however, that the complainant is entitled to go furrher, and to subject other property, not specifically included in the mortgage, to the payment of the mortgage debt. On that point this Court desires to reserve the expression of any opinion, until a more full examination of the facts has been made under the inquiry directed by the Chancellor, in relation to what became of the mortgaged property and the proceeds of it, &c.
The circuit decree intimates an opinion that the original claim of the plaintiff was only for the sum of five thousand dollars and interest, and should not include, in addition thereto, the house and slaves, or their value ; and the Chancellor rather infers that such was the understanding of the parties ; but on this subject he concludes nothing, and directs an inquiry by the Master, whether the claim should or should not be so restricted. We are of opinion that this is matter not for inquiry by the Master, but for the consideration of the Court, on an inspection of the instruments and the construction thereon to be given.
The ante-nuptial bond has no penalty, but is in the nature of a single bill for the payment of ten thousand dollars.— The mortgage is to be void on the payment of the ten thousand dollars. “It is subsequently declared that Abigail Sampson is to have the sum of five thousand dollars, part and parcel of the said sum of ten thousand dollars, also the said house and negroes, or their full value, part also of the said sum of ten thousand dollars, during her natural life,” with certain limitations set forth in. the deed. It is finally provided that “ the rest, residue and remainder of the said sum of ten thousand dollars, in the said bond mentioned, after fully securing and paying the said sum of five thousand dollars, and the house, lease and negroes, or their value in money, for the use of the said Abigail as aforesaid, shall be held and paid by the said Nathan A. Cohen, for the sole use and behoof of the said Levin L. Levy, his heirs and assigns.”
Taking these papers together, the Court is unable to give them any other construction than that Levy was to pay five thousand dollars to the trustee for the sole and separate use of his intended wife, and was to be responsible for the house and negroes, or their value, to be held also to her separate use, &c.
If the house and negroes were not forthcoming, he (L. L. Levy) was to account for their value. But if the value was less than five thousand dollars, so also would be the limit of his accountability, as the residue of the five thousand dollars was expressly reserved to himself absolutely.
*208 The bond of the 10th March, 1842, is, substantially, an (acknowledgment that the first part of the conditions of the mortgage .had been complied with. The condition of the mortgage is specially recited, and the substitution of the plaintiff in the place of the original trustee, and then that “ I, the said L. L. Levy, by the assent of the said trustee, did receive and employedjhe said sum of five thousand dollars so as above settled, &c. and am justly indebted to the said trustee in the full and just sum of fiv.e thousand dollars?' with interest from 12th April, 1834, ■ being now seven thousand seven hundred and sixty-four dollars for cash, so as aforesaid-borrowed from the said, Nathan A. Cohen as trustee; prior to his resignation of his said trust, and since, of the said Gustavus Y. Ancker,” (the plaintiff,) and then provides for. the payment of the aggregate sum of séverr thousand seven hundred and sixty-four dollars with interest, on the 14th April, 18'43. To refund the sum of five thousand dollars, thus borrowed from the trustee, the parties entered' into this new arrangement of March, 1842, the éffect of which will be hereafter considered; The only object of adverting to it at this time, is to show that by the acknowledgment of the parties, the five thousand dollars, part and parcel of the ten thousand dollars, had been received by the trustees, had .been loaned to the defendant, Levy, and for the repayment of this the trustee had resorted to a new security. The bond and mortgage of April, 1834, though satisfied as to the five thousand dollars, part and parcel of the said sum of ten thousand dollars, were still, however, of force to secure to the uses of the settlement, “ the house and negroes' or their full value, part also of the said sum of ten thousand dollars.” But, beyond that, we are of opinion that the complainant has now no claim under those instruments. How far he may be able to enforce that lien for this purpose, upon property, not specifically described in the mortgage, under the special equities set forth in the bill, must depend, as before stated, upon such facts as.the complainant maybe able to establish, and .which have not yet been satisfactorily developed to the Court/
The other question discussed and decided by. the decree, relates to the bond of 10th March, 1842, and the confession of judgment thereon in April, 1842, and a mortgage to secure the same debt. In order to understand the points raised by the grounds of appeal, it may be necessary to remark that, sometime in 1841, the complainant, G. Y. Ancker, and the defendant, L. L. Levy, entered into copartnership, under the fian of Leyy & Ancker. It is not stated at what time of the year the copartnership was formed, but that, between the months of September, 1841, and May, 1842, they purchased goods on credit in the city of New York,' at various periods, and for various amounts, for which they gave their promis- *209 soiy notes, and that the notes had not run to maturity on the 1st March, 1842. The bond of that date, from Levy to Ancker as trustee, under the settlement, is in the penal sum of fifteen thousand five hundred and twenty-eight dollars, and purports to be for the principal sum of five thousand dollars due on the bond of April, 1834, and the accruing interest. To secure this new bond of the 10th March, 1842, Levy mortgages not only the house on leased land, included in the original mortgage of 1834, but also certain slaves and “ the stock of goods, then on hand, at the store of Levy and Ancker.” On the 7th of July, 1842, Levy and Ancker made a general assignment of their estate to Benjamin F. Hunt, Esq. for the benefit of such of their creditors as should, within thirty days after notice thereof, execute to them a release and discharge of their respective claims, and, after payment of the same, the surplus, if any, for the benefit of their creditors generally. Wm. B. Smith was afterwards appointed agent for the creditors to act with the assignee. On the 10th Aug. 1842, L. L. Levy and G. Y. Ancker filed a petition in the United States Court for the benefit of the Bankrupt Act which had been passed 19th August, 1841. The application of Levy was resisted by the New York creditors, on the ground that the mortgage and confession of judgment, of March and April, 1842, to the trustee, Ancker, and the assignment of 7th July, 1842, were fraudulent under the Act of Congress, which prohibits undue preferences to the creditors of the petitioner. The objection of the New York creditors was sustained by the decree of the district Judge, who refused the certificate, and, on an appeal by the petitioner to a jury, as authorised by the Act of Congress, the verdict of the jury was in conformity with the opinion which had been expressed by the Judge. The second section of the Act of Congress, to which these transactions were pronounced obnoxious, provides that “ all payments, securities, conveyances or transfers of property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupt, &c. shall be deemed utterly void, and a fraud upon this Act; and the assignee, under the bankruptcy, shall be entitled to claim, sue for, recover, and receive the same as part of the assets of bankruptcy, and the person making such unlawful preferences and payments, shall receive no discharge under the provisions of this Act.” The certificate of discharge was accordingly refused, and James M. Walker, Esq. one of the defendants, was appointed assignee in bankruptcy. This bill is preferred on the part of the complainant as trustee, and prays, among other things, that the bond and mortgage of 10th March, 1842, and the confession of *210 judgment of 1st April, 1842, may be declared valid and subsisting liens, and that B. F. Hunt, Esq. and W. B. Smith may account for the proceeds of sales of the stock of Levy and Ancker, and the debts collected, and that James M. Walker Esq. the assignee in bankruptcy, may be declared to have no interest, and be perpetually enjoined from prosecuting his pretended claim, &>c. There can be no doubt of the general proposition, that copartnership assets must be first applied to the payment of the creditors of the copartnership. The attempt, therefore, to subject the goods in the store of Levy and Ancker, more especially if those goods were yet unpaid for, to the payment of the private creditor of L. L. Levy, could receive no sanction in this Court. But we are further of opinion, that the Act of Congress, and the judicial proceedings under it, are conclusive upon the subject. The securities given to the trustee, (the complainant,) in March and April, 1842, and the assignment of 7th July, 1842, by which those creditors who released within thirty days were entitled to the assets, were manifestly violations of the Act of Congress, and have been so judicially declared. The consequences are, also, pronounced by the Act, and can neither be misinterpreted nor avoided. The securities and transfers of property are declared to be “ utterly void,” and that the assignee in bankruptcy shall be entitled to sue for and recover the same as part of the assets of the bankrupt.
1 Rich. Eq. R, 294.
2 Sch. and Lef. 718.
It is true, as was insisted in the argument, the assignee in bankruptcy might be required to file a cross-bill before his co-defendants should be required to account to him. But cui bono ? The rule on this subject is stated by Chancellor Harper, delivering the judgment of the Court, in Bank v. Rose, “Wherever, in the progress of a cause, a defendant entitled himself to a decree, either against the complainant or against a co-defendant, and the dismissal would put him to the expense and trouble of bringing a new suit, and making his proofs anew, such dismissal will not be permitted.” And he cites the authority of Lord Eldon, in Charily v. Latouche, that a “ co-defendant may insist that he shall not be obliged to institute another suit for a matter that may then be adjusted between the defendants.”
It is ordered and decreed that the decree of the Circuit Court be reformed according to the principles herein declared, that it be referred to one of the Masters to take an account of the amount due to the complainant as trustee, under the bond of the 12th April, 1834, according to the construction herein declared, and that the complainant be at liberty to show whether any of the property included in the mortgage of that date, has been disposed of by the mortgagor, and under what circumstances, and that the Master report any special matter in relation to the same. It is further ordered *211 and decreed that the assignee and agent, under the assignment of the 7th July, 1842, account before the Master for the assets transferred to them under that deed ; any final order in relation to these matters, being reserved until the hearing of the Master’s report thereon to the Circuit Court.
JohNstoN, Caldwell and Dargan, CC. concurred.

Decree modified.